UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MAUDE BURROUGHS JACKSON,

       Plaintiff,                        CASE NO.:  3:16-cv-00010-BJD-PDB

-vs-

OCWEN LOAN SERVICING, LLC.,

       Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Plaintiff, MAUDE BURROUGHS JACKSON (hereafter, "Plaintiff"), hereby responds to Defendant, OCWEN LOAN SERVICING, LLC's (hereafter, "OCWEN"), Motion to Dismiss Plaintiff's Complaint. (hereafter, "Motion to Dismiss") (Dkt. 15), and in support thereof, states as follows:

       1.      On January 6, 2016, Plaintiff filed her Complaint in this action (Dkt. 1), asserting counts against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereafter "FDCPA") (Count I); the Florida Consumer Collection Practices Act, section 559.55, *et seq.*, Florida Statutes (hereafter "FCCPA"), (Count II);   the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, (hereafter "RESPA") and the rules and regulations applicable thereto, 24 C.F.R. § 3500.01, *et seq.*, and 12 C.F.R. 1024.30, *et seq.* (hereafter "Regulation X"), (Count III) and for common law Breach of Contract (Count IV) and Wrongful Foreclosure (Count V).

       2.      On March 11, 2015, Defendant filed its Motion to Dismiss Plaintiff's Complaint (Dkt. 15).

3.      For the reasons stated in the below memorandum of law, Defendant, OCWEN's

Motion to Dismiss (Dkt. 15) is without merit and should be denied by this Court.

## MEMORANDUM OF LAW

## I.      Motion to Dismiss Standard

"The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of

claim for relief." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1368 (11th

Cir. 1997). "It is read alongside Fed. R. Civ. P. 8(a), which requires only 'a short and plain

statement of the claim showing that the pleader is entitled to relief.'" Id. "The rule is not designed

to strike inartistic pleadings or to provide a more definite statement to answer an apparent

ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint

and attachments thereto." Id. "The question is not whether the claimant will ultimately prevail but

whether the complaint is 'sufficient to cross the federal court's threshold.'" Carr v. NCO Fin. Sys.,

Inc., CIV.A. 11-2050, 2011 WL 6371899 (E.D. Pa. 2011).

"When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's

allegations as true and evaluate all plausible inferences derived from those facts in favor of the

plaintiff." Muradas v. M & T Bank, 13-60178-CIV, 2013 WL 3224023, at *2 (S.D. Fla. 2013)

(citing Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir.2012); Miccosukee Tribe of

Indians of Fla. v. S. Everglades Restoration Alliance, 304 F.3d 1076, 1084 (11th Cir.2002)). "Upon

engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-

conclusory, factual allegations, that, if true, would push the claim 'across the line from conceivable

to plausible.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)); Am. Dental Ass'n v.

Cigna Corp., 605 F.3d 1283, 1289 (11th Cir.2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007) (explaining that allegations in a complaint "must ... contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")). "A claim is facially plausible when the plaintiff's factual allegations 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, supra, 556 U.S. at 678). As fully set forth below, Defendant OCWEN's Motion to Dismiss (Dkt. 15) should be denied.

## II.    Plaintiff's Complaint is Not a 'Shotgun Pleading'

In its Motion to Dismiss (Dkt. 15), Defendant OCWEN contends that Plaintiff's Complaint (Dkt. 1) should be dismissed because it is a "shotgun pleading" and that "[e]ach of Plaintiff's five separate, distinct claims then incorporates the entirety of Paragraphs 1-65, adding only conclusory, non-factual statements that 'insufficiently parrot the elements of the particular cause of action attempted to be stated therein [and] [n]o particular claim identifies which, if any, specific factual allegations from Paragraphs 1-65 support it." (Dkt. 15 at p. 3). While Plaintiff's Complaint (Dkt. 1) is indeed structured in such a way as to centralize the factual details common to her claims against OCWEN in the general "Factual Allegations" section of the Complaint, which sets forth a chronological account of conduct occurring over a long period of time, and then incorporates and restates by reference these general "Factual Allegations" into the specific counts asserted against OCWEN, such centralization of general factual allegations, and the incorporation by reference of the general "Factual Allegations" into the Counts, is both proper and appropriate under the circumstances, and does not constitute "shotgun pleading" pursuant to well-established Eleventh Circuit authority. See Jones v. Florida Power & Light Co., 23 A.D. Cases 250 (S.D. Fla. 2010) (declining to dismiss complaint as "shotgun pleading" and holding that "[t]he fact that each Count incorporates the general factual allegations is appropriate and unsurprising given the fact that the theories alleged are similar in nature"), distinguishing Magluta v. Samples, 256 F.3d 1282, 1284

(11th Cir. 2001) (finding a 58-page complaint to be a shotgun pleading where it made no distinction among fourteen (14) defendants charged, and incorporated not only the 146 paragraphs of general factual allegations in each count, but also incorporated the allegations contained in each count in all subsequent counts).

In Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015), the Eleventh Circuit set forth the four (4) recognized types of "shotgun pleading" as follows:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Id. at 1321-23. Plaintiff's Complaint (Dkt. 1) does not fall into any of the four (4) aforementioned categories of "shotgun pleading" recognized by the Eleventh Circuit. Contrast Tavantzis v. Am. Choppers, 614CV1519ORL40TBS, 2015 WL 6736753, at *2 (M.D. Fla. 2015) (First, each count re-alleges every preceding count, with the last count incorporating all claims for relief alleged in the entire Complaint").[1] Pursuant to the above argument and authority, Defendant's Motion to Dismiss (Dkt. 15) should be denied by this Court.

---

[1] It should be noted that the very case and quotation advanced by Defendant in support of its contention that Plaintiff's Complaint is a "shotgun pleading," Tavantzis, supra, directly relies upon the Eleventh Circuit's above decision in Weiland, and quotes *verbatim* the above cited passage from Weiland regarding the four (4) recognized types of "shotgun pleadings." However, the Defendant's representation of the quotation from Tavantzis in its Motion to Dismiss (see Dkt. 15, p. 3, n.1) materially omits that the quoted passage from Tavantzis advanced by Defendant begins by stating "**[a]ll four categories** of shotgun pleading […]." Id. at *2. (emphasis added). Defendant was surely aware that Plaintiff's Complaint did not fit into any of the four categories of shotgun pleading recognized by the Eleventh Circuit, as thoroughly addressed in Tavantzis, when it made this argument in its Motion to Dismiss, and adjusted the quotation in Tavantzis in the manner in which it did.

### III.   Plaintiff Has Alleged Sufficient Facts To Establish That Ocwen Is A Debt Collector Under The FDCPA

Defendant OCWEN contends that Plaintiff's FDCPA Count (Count I) should be dismissed, because Plaintiff has failed to adequately allege that Ocwen is a "debt collector" and that "Plaintiff was **not** in default when Ocwen obtained the servicing rights to the Debt, and there are no specific allegations that Ocwen treated the Debt as in default." (Dkt. 15 at p. 6). Contrary to Defendant's contention, it is well settled that "[t]here is no requirement in the FDCPA that the facts to support the allegation that a party is a debt collector be pled with particularity." Iyamu v. Clarfield, Okon, Salomone, & Pincus, P.L., 950 F. Supp. 2d 1271, 1275 (S.D. Fla. 2013) (quoting Carter v. Daniels, 91 Fed. Appx. 83, 85–86 (10th Cir.2004)). See also Nooruddin v. Comerica Inc., 11-1188-EFM, 2011 WL 5588806, at *3 (D. Kan. 2011) (quoting Carter, supra, 91 Fed. Appx. at 85-86); Taylor v. Harbin, LLC, CIV.A. 14-237-CG-C, 2015 WL 2345546, at *2 (S.D. Ala. 2015)). Rather, "allegations that [a defendant] 'regularly collect[s] or attempt[s] to collect debts' and is a 'debt collector' are sufficient to withstand a motion to dismiss." Id. (citing Carter, supra (allegation that an attorney "is a debt collector" is sufficient to survive a motion to dismiss)); Brussels v. David E. Newman, P.A., No. 06–61325, 2007 WL 676189, at *1 (S.D. Fla. February 28, 2007) (same)).

With respect to whether a mortgage loan servicer is a "debt collector" under the FDCPA, it is well established that "[f]or an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." Bridge v. Ocwen Federal Bank, FSB, 681 F.3d 355, 359 (6th Cir.2012). "The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." Id. Moreover, contrary to OCWEN's

contention that Plaintiff's dispute of the default status with OCWEN's predecessor in interest contravenes the default status of the loan for purposes of determining whether OCWEN is a debt collector under the FDCPA, the law is well settled that "[e]ven if a debt is not actually in default at the time its servicing rights are transferred to a loan servicer, the debt is nevertheless 'in default' under the FDCPA if the servicer treats the debt as in default at the time of transfer." <u>Bohringer v. Bayview Loan Servicing, LLC</u>, 1521053CIVALTONAGAOS, 2015 WL 6561419, at *5-8 (S.D. Fla. 2015) (noting that "a debt is considered 'in default' [even] if the servicer mistakenly believes the debt is in default"). [2]

In her Complaint (Dkt. 1), Plaintiff clearly alleges that the loan was considered to be in default by OCWEN's predecessor, Litton, at the time of Litton's transfer of the servicing rights to OCWEN in connection with OCWEN's acquisition of Litton. By way of example, Plaintiff alleges that in June of 2010, "she was notified by Litton that her loan was in default, and her July 2010 payment would not be accepted." (Dkt. 1, ¶ 14). Plaintiff further alleges that she "contacted

---

[2] (citing <u>Davidson, v. Capital One Bank (USA), N.A.</u>, 797 F.3d 1309, 1311–12, n. 2 (11th Cir. 2015) (holding "[creditor] has treated [borrower's] debt as a debt that was in default at the time it was acquired, and we will do the same.") (citing <u>Bridge</u>, supra, 681 F.3d 357, 362-63 (noting that plaintiffs alleged the creditor erroneously declared the debt in default and then transferred it to a loan servicer, and holding "[i]t matters not whether [treatment of the debt as if it were in default at the time of acquisition] was due to a clerical mistake, other error, or intention."); <u>Schlosser v. Fairbanks Capital Corp.</u>, 323 F.3d 534, 57-39 (7th Cir. 2003) (debt collector explicitly, although mistakenly, asserted the plaintiffs' debt was in default in a formal notice of default, and therefore the Seventh Circuit found the debt collector was not covered by the (F)(iii) exclusion)); <u>Belin v. Litton Loan Servicing, LP</u>, No. 8:06–cv–760–T–24 EAJ, 2006 WL 1992410, at *1, 3 (M.D. Fla. July 14, 2006) (plaintiffs alleged the debt collectors explicitly asserted the debts were in default at the time the debts were transferred; <u>Cyphers v. Litton Loan Servicing, L.L.P.</u>, 503 F. Supp. 2d 547, 551 (N.D.N.Y. 2007) ("A person collecting or attempting to collect a debt which was not in default at the time it was obtained by that person, but which that person *believed* was in default at that time . . . [in view of] the FDCPA's stated purpose and substantive provisions, it becomes clear that they can and should be considered 'debt collectors' under the FDCPA") (emphasis in original).

Contrast <u>Monroe v. CitiMortgage, Inc.</u>, 8:07CV0066 SCBTGW, 2007 WL 1560194, at *2 (M.D. Fla. 2007) (holding that mortgage servicer was not a "debt collector" under the FDCPA where "[t]here [was] no allegation in Plaintiffs' complaint that the mortgage was in default at the time that [servicer] became its assignee"); <u>Brumberger v. Sallie Mae Servicing Corp.</u>, 84 Fed.Appx. 458, 459 (5th Cir.2004) (upholding district court's decision that FDCPA did not apply in the absence of allegations that loans were in default at the time of servicing); <u>Porter v. Fairbanks Capital Corp.</u>, No. 01-CV-9106, 2002 WL 31163702 (N.D.Ill.2002) (dismissing claim because plaintiff failed to allege that debt was in default at the time it was acquired by defendant). In contrast to these decisions, Plaintiff has clearly alleged that the debt was treated as being in default at the time OCWEN acquired the servicing rights.

[Litton's counsel] and requested to make partial payments of the amount alleged to be delinquent by Litton and [Litton's counsel] [but that] Litton and [Litton's counsel] repeatedly refused Plaintiff's requests, and demanded that Plaintiff make payment of the alleged reinstatement amount in full." (Dkt. 1, ¶ 19). Plaintiff further alleges that "[s]ubsequent to [her] initiating the Pro Se Action [against Litton], Litton was acquired by Defendant OCWEN, after which OCWEN acquired the servicing rights for the subject mortgage loan on or about November 4, 2011 [and that] at the time OCWEN acquired the servicing rights for the subject mortgage loan, the loan was alleged to be in default." (Id. ¶ ¶ 22-23). The Complaint (Dkt. 1) does not suggest that OCWEN treated the loan any differently than Litton after acquiring Litton, and in fact, alleges that OCWEN stepped into the shoes of Litton upon acquiring the servicing rights, later entering into a loan modification agreement with Plaintiff to resolve the dispute regarding the default status of the loan.

Accordingly, Plaintiff has more than adequately alleged that the loan was treated by Litton as being in default status at the time the servicing rights were transferred to OCWEN. Pursuant to the above authority, these allegations sufficiently establish that OCWEN is a debt collector for purposes of considering a motion to dismiss.[3] Therefore, pursuant to the above argument and authority, Defendant's Motion to Dismiss with respect to Plaintiff's FDCPA claim should be denied by this Court.

## IV.     Plaintiff Has Alleged the Required Knowledge And/Or Intent Necessary to Establish a Claim Under The FCCPA

---

[3] Moreover, OCWEN's own correspondence to Plaintiff belies its contention that it is not a "debt collector." See, e.g., OCWEN's December 18, 2013 letter, attached as Exhibit "F" to the Complaint (Dkt. 1), in which OCWEN states "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose." See Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1217 (11th Cir. 2012) (denying law firm's motion to dismiss FDCPA claim arising out of mortgage reinstatement letters sent on behalf of mortgage servicer, noting that "one of the three documents enclosed with the letter specifically states that the law firm 'IS ATTEMPTING TO COLLECT A DEBT,' and another states 'THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.'").

Defendant OCWEN argues that Plaintiff's FCCPA claim, contained in Count II of the Complaint (Dkt. 1), fails to allege the required knowledge and/or intent on the part of OCWEN. Defendant argues that "[r]ather than including required factual allegations supporting a violation of each relevant provision of § 559.72, Count II simply parrots the relevant statutory language, including conclusory allegations concerning knowledge and intent." (Dkt. 15, p. 7-8). Contrary to OCWEN's argument, Plaintiff has provided sufficient factual allegations in the general "Factual Allegations" section of the Complaint to support that OCWEN knowingly and/or willfully engaged in the conduct alleged to have violated of the FCCPA, and incorporates and restates by reference these allegations into the FCCPA Count. As previously stated, such incorporation by reference is both proper and appropriate under the circumstances. See Jones, supra, 23 A.D. Cases 250.

A.    Violation of section 559.72(5) of the FCCPA

Section 559.72(5) of the FCCPA provides that "[i]n collecting consumer debts, no person shall:

> Disclose to a person other than the debtor or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false....

Fla. Stat. § 559.72(5). In support of her allegation that Defendant violated this subsection of the FCCPA (Dkt. 1, ¶ 79), Plaintiff alleges that, "Defendant [OCWEN] intentionally harassed and abused Plaintiff on numerous occasions by [among other things,] reporting false information to the Credit Reporting Agencies ('CRAs') with respect to the Plaintiff. (Dkt. 1, ¶ 11). Plaintiff further alleges that Defendant falsely reported information to the IRS with respect to the Plaintiff regarding the subject debt, which was in express contradiction to the terms of the settlement agreement in the Pro Se Action, and which wrongfully subjected the Plaintiff to tax liability. (Dkt. 1, ¶ 28-29). Furthermore, the Complaint alleges that "[o]n or about January 3, 2014, Plaintiff filed

a complaint with the Florida Attorney General regarding [among other things,] OCWEN's false reporting to the IRS of canceled debt, causing Plaintiff to suffer tax liability." (Dkt. 1, ¶ 40).

In support of its Motion to Dismiss this claim, OCWEN relies in part on Gill v. Kostroff, 82 F. Supp. 2d 1354, 1362 (M.D. Fla. 2000), a case in which the court denied a motion for summary judgment brought by the plaintiff contending that Defendant violated this subsection of the FCCPA "by disclosing to Plaintiff's employer the existence of consumer debt information, through the income execution, with knowledge or reason to know, that the information contained therein was false," on the grounds that the plaintiff "cited no deposition transcript or other evidence that establishes Defendants['] alleged knowledge.'" As set forth above, Plaintiff's factual allegations make it clear that Defendant OCWEN was aware that the information it reported to the IRS and other credit agencies was false.

B.   Violation of section 559.72(7) of the FCCPA

Section 559.72(7) of the FCCPA provides that "[i]n collecting consumer debts, no person shall:

> Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

Fla. Stat. § 559.72(7). "There is no exact formula or checklist to determine whether a communication is abusive or harassing in nature; rather, to violate the statue, the behavior must be evaluated as a whole under the circumstances." Scott v. Florida Health Scis. Ctr., Inc., 8:08-CV-1270-T-24EAJ, 2008 WL 4613083, at *2 (M.D. Fla. 2008). The above FCCPA provision is analogous to the FDCPA's "catch all" provision – 15 U.S.C. § 1692d – and is likewise construed as being purposefully broadly drawn to enable the trier of fact, where appropriate, to proscribe other "other conduct" pursuant to clause II which is not specifically addressed under clause I. See

Story v. J. M. Fields, Inc., 343 So. 2d 675, 676-77 (Fla. 1st DCA 1977) (explaining that "[t]he proposers of legislation similar to Section 559.72(7) suggest that such an 'admittedly imprecise' provision invokes the 'role of the courts . . . to reflect contemporary standards of fair conduct . . .'"). Indeed, the statutory language of the FCCPA advises courts that "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5).

With respect to the requirement of "intent" under Section 559.72(7), "[i]ntent may be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called[,]" among other things. Brandt v. I.C. Sys., Inc., 8:09-CV-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. 2010) ("[o]nce Plaintiff allegedly told Defendant to stop calling him, that he had already paid the alleged debt, and that their calls were bothering him, each of the [ ] subsequent phone calls to Plaintiff constituted [conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in] violation of 15 U.S.C. § 1692d, and noting that "[t]he concept of knowledge and intent is not defined in the FCCPA; however, the FCCPA relies on the FDCPA for definitional guidance," id. at *3).

In her Complaint, Plaintiff alleges that on or about August 22, 2013, Plaintiff sent a letter to OCWEN, requesting, among other things, that Defendant cease and desist from calling the Plaintiff regarding the subject debt. (Dkt. 1, ¶ 33, Ex. C). The complaint further alleges that despite Plaintiff's unambiguous instructions that OCWEN cease and desist from calling Plaintiff regarding the subject debt, OCWEN nevertheless proceeded to initiate debt collection calls to Plaintiff, seeking to collect alleged "past due" amounts that were not owed, as Plaintiff had paid each of the monthly installment payments Ocwen was calling to collect via certified funds. (Dkt.

10

1. ¶ 37). The Complaint goes on to allege that the calls continued well into 2015, including a particularly abusive and harassing debt collection call that was placed by OCWEN on Saturday, April 18, 2015 at 11:40AM, during which Plaintiff spoke with OCWEN's collection representative identified as "Rustan," Identification. No. 12819, who advised Plaintiff that her home was "in foreclosure." (Dkt. 1, ¶ 56). Plaintiff alleges that during this call, "Plaintiff advised Rustan that she had an attorney representing her in planned litigation against OCWEN, and provided her attorney's name and contact information," and that "Rustan responded with bullying and intimidation tactics, telling Mrs. Jackson: 'You cannot have an attorney -- OCWEN must approve any decision whether or not to allow you to have an attorney.'" (Dkt. 1, ¶ 56). Plaintiff further alleges that this call made her "[e]motionally distraught, [at which time] Plaintiff called her adult son David Ham to the phone to speak to Rustan" and that "Rustan repeated the same statement to Mr. Ham: 'Your mom cannot have an attorney. OCWEN must approve any decision whether or not to allow you to have an attorney,' [causing] Mr. Ham [to] disconnect[] the phone in outraged frustration." (Dkt. 1, ¶ 57).

Pursuant to the above cited authority, the above referenced allegations adequately allege "intent" under section 559.72(7) of the FCCPA, and Defendant's Motion to Dismiss (Dkt. 15) should accordingly be denied.

C.     Violation of section 559.72(9) of the FCCPA

Section 559.72(9) of the FCCPA provides that "in collecting consumer debts, no person shall:

> Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. § 559.72(9). Additionally, "[t]o plead a FCCPA claim, a party must allege 'knowledge or intent by the debt collectors in order to state a cause of action." <u>Reese v. JPMorgan Chase & Co.</u>, 686 F.Supp.2d 1291, 1309 (S.D. Fla. 2009).

In <u>Neptune v. Whetstone Partners, LLC</u>, 34 F. Supp. 3d 1247, 1251 (S.D. Fla. 2014), the court denied a lender's motion to dismiss the plaintiff's claim under section 559.72(9) of the FCCPA, holding that the plaintiff's allegations that "he procured a loan with [d]efendant, for which payment was to be made by the [p]laintiff on the 17th of each month for the term of one year[,]" and that the plaintiff "sufficiently alleged knowledge by [d]efendant of when Plaintiff's monthly payment was due" sufficiently alleged that the defendant "was asserting a legal right that did not exist" where the plaintiff alleged that the defendant "was attempting to collect payments from him when they were not yet due."

In <u>Manrique v. Wells Fargo Bank N.A.</u>, 116 F. Supp. 3d 1320 (S.D. Fla. 2015), the court denied a mortgage servicer's motion to dismiss a borrower's claim under section 559.72(9) of the FCCPA, which was "premised on the conduct of charging allegedly invalid fees and allegedly providing a false payoff statement, which included those fees along with a discrepancy between 'Total Fees Owed' and 'Other Unpaid Expenses.'" <u>Id.</u> at 1325. Specifically, the plaintiff alleged that the mortgage servicer sent a payoff statement in response to Plaintiff's request, which included erroneous, unnecessary, and inflated charges, including numerous property inspection fees, and that the charging of these fees constituted "a claim or an attempt to enforce a debt that [the defendant] knows is not legitimate." <u>Id.</u> at 1321-22. In its motion to dismiss, the defendant argued that the plaintiff's FCCPA claim could not be predicated upon the payoff statement, which was required to be sent to Plaintiff under the federal Truth in Lending Act ("TILA"), and was not sent in connection with the collection of a debt. <u>Id.</u> at 1324. In response, the plaintiff "explain[ed]

that his FDCPA and FCCPA claims [were] not based upon the response itself, but that '[t]he payoff statement merely evidences the unlawful charges of fees' [and that] his claims [were] premised upon "Defendants' *charging* of unlawful, deceptive, and misleading fees." Id. at 1325. (emphasis in original). In denying the motion to dismiss, the court, citing Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291 (11th Cir.2015), concluded that the plaintiff's complaint was "not premised upon the actual payoff statement itself; rather, the payoff statement is a part of Defendants' conduct, and that conduct has allegedly violated the FDCPA and FCCPA." Id.

See also Gnipp v. Bank of Am. N.A., 2:15-CV-99-FTM-29CM, 2016 WL 502013, at *15 (M.D. Fla. Feb. 8, 2016) (denying motion to dismiss plaintiff's claim under section 559.72(9) of the FCCPA, holding that "[a]t this early stage in litigation, before any discovery has commenced" plaintiff's allegation "that NCO, a debt collector, intentionally attempted to collect a debt, which did not exist, from plaintiff, a consumer . . . adequately plead a claim under the FCCPA"); Prescott v. Seterus, Inc., 15-10038, 2015 WL 7769235, at *4-5 (11th Cir. 2015) (violation of section 559(9) of the FCCPA could be premised upon mortgage servicer's demand that borrower pay attorney's fees before reinstating his loan if it knew it was not entitled to receive such fees it under the terms of the security agreement); Scott v. Florida Health Scis. Ctr., Inc., 8:08-CV-1270-T-24EAJ, 2008 WL 4613083, at *3-4 (M.D. Fla. 2008) (denying motion to dismiss claim under section 559.72(9) of the FCCPA, holding that plaintiff's allegations sufficiently alleged that the defendant "was aware of the illegitimacy of the debt and is responsible for having tried to collect the debt anyway" where plaintiff alleged, in relevant part, that "[p]ersons working directly for [the defendant] were informed of the full payment of the debt (1) when they received the full payment [and] (2) when Plaintiff informed the caller from Defendant's collection department of the payment").

Plaintiff's Complaint includes sufficient factual allegations that OCWEN attempted to collect a debt from plaintiff that it knew was not legitimate and asserted legal rights that it knew did not exist. By way of example, Plaintiff alleges that in servicing the subject mortgage loan, OCWEN materially breached the terms of the settlement agreement in the Pro Se Action, beginning with its failure to applying the payments to the balance of the subject mortgage loan as agreed, and instead, unlawfully diverting these payments towards what it labeled "outstanding fees/expenses," which represented its alleged costs and attorneys' fees in the Pro Se Action, as well as numerous false and inflated fees and charges that were the subject of the Pro Se Action, including but not limited to Filing and Service of Process Fees for the foreclosure action that did not occur, and numerous "Property Inspection" and "Property Valuation" fees, each of which was expressly released and prohibited from being assessing against Plaintiff's mortgage loan account and installment payments thereafter pursuant to the terms of the Settlement Agreement. (Dkt. 1, ¶ 27, Ex. A, B). [4]

Plaintiff further alleges that in February of 2013, her mortgage payment was dishonored due to a banking error, and that Plaintiff thereafter brought the account current, but that OCWEN continued to charge Plaintiff for returned check fees for the same returned check in each subsequent month, as well as assessing improper late charges, even though each subsequent monthly payment was timely made to OCWEN by Plaintiff. (Dkt. 1, ¶ 32).

---

[4] Defendant OCWEN contends that Plaintiff's FCCPA claim is limited to conduct occurring between January 6, 2014 through January 6, 2016 because the statute of limitations under the FCCPA is two (2) years. However, because OCWEN's alleged violations of the FCCPA relating to the servicing of the subject mortgage loan that occurred prior to January 6, 2014 were part of a "continuing violation" of the FCCPA that allegedly continued well into the two-year statute of limitations period, and because these initial acts are the very source of OCWEN's continued mishandling of Plaintiff's account, such acts are appropriate for consideration in connection with Plaintiff's FCCPA claim in this action. See, e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C., 281 F.Supp.2d 1156 (N.D. Cal. 2003) (Debt collection agency's alleged repeated calls harassing debtor, including automated phone calls, were not discrete acts, but rather, amounted to pattern of conduct warranting application of continuing violation theory, and thus, agency's conduct which occurred outside of limitations periods under the Fair Debt Collection Practices Act (FDCPA) and California's Rosenthal Fair Debt Collection Practices Act was actionable).

The complaint further alleges that throughout 2013, OCWEN failed to credit various mortgage payments that had been sent by Plaintiff's via cashier's checks, and likewise failed to return the payments, or hold the payments in suspense. (Dkt. 1, ¶¶ 35, 37). Moreover, despite having purportedly rejected said payments, Defendant sent no written notices to Plaintiff indicating that the payments had been rejected. (Dkt. 1, ¶ 37). The complaint goes on to allege that Defendant sent Plaintiff a reinstatement letter in December of 2013, stating that the loan was in default because Plaintiff had not made the October 2013, November 2013 and December 2013 payments, despite having been in possession of Plaintiff's certified funds, and further alleges that even if Defendant had deemed the payments to constitute "partial payments," it was nevertheless required pursuant to 24 CFR § 203.556 to either return the payments with a letter of explanation, or, once in possession of payments that aggregated a full monthly installment payment, was required to apply the payment to Plaintiff's mortgage loan account. (Dkt. 1, ¶¶ 38-39). The Complaint further alleges Plaintiff sent the additional funds required to satisfy the amount demanded by Defendant in its December 18, 2013 reinstatement letter, but that Defendant returned the payments. (Dkt. 1, ¶ 42).

The Complaint goes on to allege that on January 13, 2014, Plaintiff sent Defendant cashier's checks via overnight mail in the full amount demanded by OCWEN in its December 18, 2013 letter, but Defendant refused to apply these payments to Plaintiff's account balance, and demanded that Plaintiff pay pay $6,791.52 to "reinstate" the subject loan. Plaintiff alleges that on January 31, 2014, she "paid the disputed reinstatement amount of $6,791.52 to OCWEN with Vystar Official Check number 002766525" and paid each monthly installment payment owed on the subject loan thereafter via cashier's check. (Dkt. 1, ¶¶ 46-50).

15

The Complaint further alleges that "[d]espite the fact that Plaintiff has continued to make each of the monthly installment payments owed to OCWEN pursuant to the terms of the Settlement Agreement, Defendant OCWEN has continued to improperly allocate Plaintiff's monthly mortgage loan payments, and continues to assess false, misleading, and unearned fees and charges to Plaintiff's mortgage loan account, including fees and charges that were specifically released, waived, and/or prohibited by the terms of the Settlement Agreement." (Dkt. 1, ¶ 53).

However, despite having received each of these payments, OCWEN sent a notice of default to Plaintiff on March 24, 2015. (Dkt. 1, ¶ 51). The Complaint further alleges that OCWEN thereafter sent a letter to Plaintiff dated April 3, 2015, stating that Plaintiff was not eligible to participate in HAMP because her mortgage loan payments "are current," in contradiction of its statement in the aforementioned notice of default, sent just three (3) weeks earlier. (Dkt. 1, ¶ 55). Less than two-weeks later, on June 15, 2015, Defendant sent Plaintiff another letter entitled "Reinstatement Quote," stating that Plaintiff was significantly delinquent with respect to the subject mortgage loan payments, and that Plaintiff would be required to pay $6,285.88 by July 17, 2015 to "reinstate" the subject mortgage loan, despite representing two weeks earlier that Plaintiff's payments were current, and despite the fact that Plaintiff had made each of the monthly installment payments owed as of that date. (Dkt. 1, ¶ 59).

Pursuant to the above cited authority, Plaintiff's above referenced allegations regarding OCWEN's continuing conduct of improperly allocating Plaintiff's monthly mortgage loan payments, and that it continues to assess false, misleading, and unearned fees and charges to Plaintiff's mortgage loan account, including fees and charges that were specifically released, waived, and/or prohibited by the terms of the Settlement Agreement, and that OCWEN has sent numerous "reinstatement" letters to Plaintiff demanding amounts that are not owed, despite the

fact that Plaintiff has continued to make each of the payments owed to OCWEN pursuant to the terms of the Settlement Agreement, sufficiently allege that OCWEN attempted to collect a debt from plaintiff that it knew was not legitimate and asserted legal rights that it knew did not exist. Accordingly, Defendant's Motion to Dismiss should be denied.

D.    Violation of Section 559.72(18) of the FCCPA

Plaintiff also alleged that Defendant OCWEN violated section 559.72(18) of the FCCPA, which states that "[i]n collecting consumer debts, no person shall:

> Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

Fla. Stat. § 559.72(18). In support of this claim, Plaintiff alleges in her Complaint that "[o]n Saturday, April 18, 2015 at 11:40AM, Plaintiff received the aforementioned call from Defendant's representative, Rustan, and that Plaintiff advised Rustan that she had an attorney representing her in planned litigation against OCWEN, and provided her attorney's name and contact information. (Dkt. 1, ¶ 56). The Complaint (Dkt. 1) further alleges that on or about June 15, 2015, Defendant sent the above described "Reinstatement Quote" demanding that Plaintiff pay $6,285.88 by July 17, 2015 to "reinstate" the subject mortgage loan directly to Plaintiff, rather than her attorney. Because OCWEN had been informed that Plaintiff was represented by an attorney with respect to the subject loan, and had been provided with her attorney's name and contact information, the allegations sufficiently establish that OCWEN's direct communication with Plaintiff was an express violation of section 559.72(18) of the FCCPA. Accordingly, Defendant's Motion to Dismiss (Dkt. 15) should be denied.

**V.    Plaintiff Has Adequately Alleged Damages Under Respa**

Defendant, OCWEN argues that Count III of Plaintiff's Complaint fails "to show that [she] suffered any actual damages from conduct after January 10, 2014, that purportedly violated § 2605(k) [of RESPA]." (Dkt. 15 p. 11). Contrary to OCWEN's contention, Plaintiff has pled sufficient facts to establish a claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* (RESPA) and the applicable regulations set forth in 24 C.F.R. §3500.1, *et seq.*, and 12 C.F.R. § 1024.30, *et seq.* (Regulation X) against OCWEN. In her Complaint, Plaintiff alleges that she suffered "statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life pursuant to . . . 12 U.S.C. § 2605(f) have continued and are continuing as of the filing of this complaint." (Dkt. 1, ¶ 64). See Bryan v. Fed. Nat. Mortg. Ass'n, 8:14-CV-307-T-26TGW, 2014 WL 2988097, at *1 (M.D. Fla. 2014).

In Bryan, the court denied the defendant's motion to dismiss a RESPA count based on the same arguments OCWEN has raised in seeking dismissal of Plaintiff's RESPA claim here. The defendant in Bryan "contend[ed] that [plaintiff's RESPA count] was deficient because 1) the alleged statutory violations did not go into effect until January 10, 2014, and 2) the alleged damages are insufficient under RESPA." Id. at *3. The Bryan court held as follows, in relevant part:

> "[i]n paragraph 43 [of their complaint], also alleging damages, Plaintiffs specifically cite § 2605(f). These two paragraphs are incorporated by reference into [the RESPA] Counts [] in paragraphs 88 and 96 of the amended complaint. Accordingly, Plaintiffs have adequately alleged damages."

Id. Furthermore, regarding the date the plaintiffs' claims under RESPA allegedly accrued, the Bryan court held that "[a]t this stage of the proceedings on a motion to dismiss, the Court finds

that the precise dates of the violations are best left for factual development through the discovery process." Id.

## VI.   **Plaintiff Has Pled A Proper Wrongful Foreclosure Claim**

Defendant, OCWEN argues that Plaintiff's Wrongful Foreclosure claim (Count V) must be dismissed because "[f]irst, the Complaint fails to state a claim for wrongful foreclosure. Second, and in the alternative, the wrongful foreclosure claim is a compulsory counterclaim that Plaintiff failed to raise in the state court foreclosure action." (Dkt. 15 at p. 12). For the reasons stated below, Defendant's contentions are incorrect and its Motion to Dismiss the Complaint based on these contentions should be denied. The elements of wrongful foreclosure claim are generally recognized as being "(1) a legal duty owed by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the plaintiff's injury; and (4) damages." Carroll v. Bank of Am., NA, 537 Fed. Appx. 933, 934 (11th Cir. 2013) (citing Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga.App. 369, 601 S.E.2d 842, 844 (2004)). There is no requirement that a foreclosure that is the subject of a wrongful foreclosure claim be fully resolved.

Defendant OCWEN incorrectly relies on Raines v. GMAC Mortg. Co., 309-CV-00477J-25HTS, 2009 WL 4715969, at *1 (M.D. Fla. 2009) to support its contention that Plaintiff's Wrongful Foreclosure claim should be dismissed as an "attempted wrongful foreclosure" claim. However, the foreclosure action in Raines had been voluntarily dismissed by the mortgagee. Whereas here, OCWEN has not dismissed the foreclosure case it has filed against the Plaintiff, which remains pending to date.

Plaintiff's Complaint sufficiently lays out factual allegations to establish a properly claim for wrongful foreclosure. By way of example, Plaintiff alleges that "On or about August 31, 2015, OCWEN initiated a foreclosure proceeding against Plaintiff, in which OCWEN is seeking to

enforce the note and take possession of the Plaintiff's home securing the subject mortgage loan, thereby dispossessing Mrs. Jackson of her home. (Dkt. 1 ¶ 61), which is predicated solely upon its improper handling of Plaintiff's mortgage payments, as described herein. Defendant OCWEN also alleges that Plaintiff's wrongful foreclosure claim is compulsory counterclaim in the foreclosure action. Cases Both claims depend entirely on the terms of the subject note and mortgage, as well as on Plaintiff's and Ocwen's respective conduct under the terms of those documents." (Dkt. 15 at 14). However, because Plaintiff has properly alleged a claim for wrongful foreclosure which is a separate cause of action as explained above, OCWEN is incorrect in its argument. [5]

Pursuant to the above argument and authority, Defendant's Motion to Dismiss with respect to Plaintiff's wrongful foreclosure claim should be denied by this Court.

## VI.   Conclusion

Pursuant to the above cited argument and authority, Plaintiff, MAUDE BURROUGHS JACKSON respectfully request that this Court deny Defendant OCWEN LOAN SERVICING LLC's Motion to Dismiss Plaintiff's Complaint (Dkt. 15) pursuant to Rule 12(b)(6).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of April, 2016, I caused a copy of the foregoing to be electronically filed with the Clerk of the District Court using the CM/ECF system, which will provide electronic notice of the filing to all counsel of record.

Respectfully Submitted,

*s/David P. Mitchell*_____
David P. Mitchell, Esquire
Florida Bar No.: 67249
Maney & Gordon, P.A.

---

[5] See Neil v. S. Florida Auto Painters, Inc., 397 So. 2d 1160, 1165-66 (Fla. 3d DCA 1981) (holding in similar malicious prosecution context, "[w]hile this malicious prosecution claim could have been brought as a counterclaim to APCA's later suit for damages, it was not required to be brought").

5402 Hoover Boulevard
Tampa, Florida 33634
Telephone: (813) 888-6700
Fax: (813) 888-6708
david@mitchellconsumerlaw.com
d.mitchell@maneygordon.com
v.marrero@maneygordon.com
Counsel for the Plaintiff